Monday, March 30th, the Judges pronounced their opinions seriatim.
JUDGE BROOKE.
I am of opinion that the Chancellor’s decree be affirmed, with the explanation, agreed upon, to be expressed in the entry of the decree of this Court.
JUDGE ROAHE concurred in affirming the decree with that explanation.
JUDGE FLEMING, being of a different opinion expressed himself as follows:
However painful it may be to my feelings to dissent from a majority of the Court, a sense of duty impels me to do so, on the present occasion.
This suit is founded on a contract in writing, without a seal, for the sale and purchase of a tract of land, purchased by the seller from Fortunatus Sydnor, supposed to contain 500 acres. The Vender charges the Vendee with breaches of the contract, of which he loudly complains; and, instead of bringing his action at law for damages, he comes into a Court of Equity, and, in the first instance, prays that the contract may be cancelled; and that the defendant allow him for rents and profits of the land, and that special damages &c. may be inquired of by a jury; but, if the said contract is to be carried into effect, then for other relief. It is a maxim too well established to be controverted at this day, and very applicable in the present case, that whoever comes into a court of Equity, to ask relief, must first do equity. Let us examine whether the complainant, in the case before us, has done so?
And here I must recur to the contract itself, which, though hastilj', and imperfectly drawn, I construe upon •’equitable principles, and according to what I conceive to have been the true intention and understanding of the parties at the time of making it; the substance of which is briefly this: Purcell sells to Mayo the land purchased of Fortunatus Sydnor, (describing the boundaries,) supposed to contain 500 acres, but to be surveyed, to ascertain the true quantity; for which Mayo was to give him 61. per acre; the principal to be paid at any time, or times, within 20 years, at the option of the vendee, who, in the mean time, was to pay interest; to commence three months after the date of the contract; and payment to be secured by mortgage.
It must be understood, then, especially in a Court of Equity, where the vendee is brought by the vendor for relief, that the latter was to make him a good and indefeasible title, clear of all encumbrances, and to give immediate possession, or, at farthest, within three months from the date of the contract; as that was the time the interest to be paid on the purchase money was to commence; no particular time being mentioned in the writing, for giving possession.
It was known to the parties, at the time of the contract, that Mrs. Sydnor had not relinquished her right of dower in the premises, which the vendor asserted might be had for 2001., which sum Mayo agreed to pay nine months after her right of dower should be relinquished; to be deducted out of the principal purchase money. The next inquiry is, on whom was it incumbent to procure that relinquishment? I answer, on the vendor, who was bound in conscience to make a complete and perfect title to the purchaser.
Mayo having waited long for Purcell to *691 obtain the relinquishment of dower, which he failed to do; and being (I suppose) unwilling to receive a deed for land thus encumbered, was at length obliged to give 1,260 dollars, instead of 2001., to Mrs. Sydnor, for her right, after many efforts to obtain it for less: and he swears, in his answer, that Purcell assured him it might be purchased for the ^latter sum, (which I believe to be true, as that much he agreed to pay out of the principal,) and that the growing crop might be purchased of Sydnor at a fair valuation.
Prom this view of the case, two questions seem to arise:
1st. Whether Mayo ought not to have full credit for the 1260 dollars, instead of 2001.? and,
2d. Whether he ought to pay interest on the purchase money, before he was put in full possession of the premises?
As to the 1st point, I am clearly of opinion that the appellant ought to have full credit for the sum he was obliged to pay for Mrs. Sydnor’s right of dower, as it was the duty of the appellee to clear the land from all encumbrances; and there is no evidence that he ever applied to Mrs. Sydnor, or to her agent, on the subject; and it is in proof that under the then existing circumstances, the dower right was purchased at a low price; Sydnor being a dissipated, sickly man, and his wife a hale, healthy woman.
With respect to the 2d point, X also think, upon sound principles of equity, that is also in favour of the appellant; for although, by the agreement, interest was to commence in three months from the date thereof, which was the 22d of April, 1799, it must have been understood that possession was to be given accordingly; and it is in evidence, by the depositions of Charles Smith and Elisha Williams, that Purcell himself so considered, and understood the contract, both of whom depose to that effect. Elisha Williams, “in the year 1800, heard Purcell wish that Fortuna-tas Sydnor would remove from the land, as he paid him no rent; and that his being there as a tenant would prevent his drawing the interest from Col. Mayo, who (he supposed) would not be chargeable with interest while said Sydnor stayed, nor until he, Mayo, had quiet possession.” Charles Smith heard Purcell express himself to the same effect; does not remember the particular words made use of, ‘ ‘but that he so expressed himself, as to convey the idea that interest would not be chargeable to Col. Mayo until Sydnor removed.” If, then, a party deeply ^'interested in a contrary construction, so understood the contract, well may his judges do so likewise; especially, as it is agreeable to sound principles, both of law and equity, as laid down by all the judges in the case of Raun v. Hughes, cited 7 Term Rep. 350, that a promise must be coextensive with the consideration. The promise here was, that the appellant should pay interest, to commence in three months from the date of the contract; and the implied consideration was, that he should then have possession of the property, for which that interest was to be paid; and so Purcell himself understood the contract, as before noticed. He, indeed, charges in his bill, that in July, 1799, he gave up the keys and possession of a house; and then Mayo sent hands there to ditch in the plantation; and that before Sydnor moved off the land, Mayo cut timber thereon, for his bridge. Eet us see how that matter stands, upon the evidence. The land thus sold, and supposed to contain 500 acres, consisted of three distinct parcels, or tenements; one, the manor plantation of 200 acres, where Fortunatas Sydnor lived; a 2d, of 200 acres, formerly purchased by him of Robert Sydnor, on which was a small unfinished dwellinghouse; and the 3d, of 100 acres, he purchased of Miles Selden, but was never conveyed to him; but a deed made to Purcell for the same, on the 5th day of June, 1803, more than 4 years after the contract; until which time, he could not have made a valid title to Mayo.
The delivery of the keys, and possession of the house charged in the bill, was of the unfinished house on Sydnor’s Point, formerly Robert Sydnor’s, in which he, Mayo, put one Jones, who paid no rent, but was put there merely to prevent the destruction of the house by watermen, who had done it great injury: and, as to the “ditching in of the plantation,” spoken of in the bill, it is in full evidence that the ditch was on the main road, purely to prevent the upland wagoners from trespassing on the land, on which they had already committed great *waste; and which ditch Purcell himself contracted to finish; it having been already begun.
He further charges in his bill that, in the latter end of the year 1800, the appellant applied to him, to know how Sydnor was to be got off the land; and he told him, “he might apply to the Court of Chancery, and he would enforce Sydnor to deliver up possession.” So, by the complainant’s own showing, Mayo was, by his advice, to be involved in a tedious and expensive chancery suit, to obtain that possession which he ought to have secured to him long before: and, by an after thought of his, charged him with interest all tlie while; which he had repeatedly acknowledged he had no right to demand. I am, upon the whole, of opinion that the decree is erroneous; 1st, In not allowing the appellant the full sum he was obliged to pay Mrs. Sydnor for her right of dower: 2dly, In compelling him to pay interest before he was put into full possession of the premises, contrary to the understanding of the contract by the appellee himself, as at different times, and to different people, he confessed ; and, lastly, That the appellee is not decreed, in any event, to make the appellant a title to the land in question which he sold him.
In the case of Grantland v. Wight, the former purchased of the latter a lot in the city of Richmond, and gave his bond for the purchase money. Possession of the ground was immediately given to Grant-land, who built a large brick house upon it, for which he was receiving rent. A suit was brought, and judgment obtained on the bond; which he enjoined, on a sugges *692 tion that there was a deficiency in the •quantity of ground. The Chancellor dismissed the bill, and Grantland appealed to this Court, which directed the injunction to be reinstated, until Wight should tender him a good and sufficient deed in the opinion of the Chancellor, to whose Court the cause was remanded, for that purpose, and for that alone.
Friday, April 3d, an argument took place, on a point propounded by the Court; whether the Chancellor having omitted to direct, expressly, that a deed be made from Purcell to Mayo, this Court ought to reverse the decree; or to affirm it, and add the direction which the Chancellor should have 'given?
Wirt, for the appellant,
contended that the decree ought to be reversed. It does not provide for making a deed. It directs the payment of a specific sum by Mayo, and that he shall make a mortgage to Purcell; but it says nothing about Purcell’s making a deed to him. The Court’s opinion, “that the agreement ought to be specifically performed by both parties,” cannot be considered as directing a deed to Mayo; 1st, Because these words are no part of the decree itself; they are only a recital of the motive which led to the decree; not a direction of what shall be done; 2dly, Suppose these words a part'of the decree, they determine nothing: the suit calls for a construction of the agreement: these words say, that the agreement shall be executed by both parties, without deciding what the construction is. In the agreement nothing is said about Purcell’s making a title: that he should make a title is a legal inference from the contract of sale: the words in question leave this inference just where the agreement left it. If Mayo had waited on Purcell with a copy of this decree, and, relying on those words, called on him for a title before he paid the money; might not Purcell well have answered, that the agreement did not say that he should make a deed; and, therefore, the Chancellor had not said so?
*It is not by this general mode of expressing.an opinion, that the Court of equity makes a decree: it is by directing what is to be done; it is the order given to the parties under the opinion, which shows what they are todo.(a) It may be said, that the direction that Mayo shall make a mortgage of the land to Purcell, implies that Purcell shall previously make a deed to Mayo: but what sort of a decree is that in which the duties to be performed on one side are expressed, and those on the other side are left to implication? Such implication may be denied. , Its necessity does not appear: for Mayo may make a mortgage, subjecting his equitable title, without having any legal title himself. This would be incorrect to be sure; but that is the very' subject of complaint. It is the province of a decree to leave nothing to dubious ' implication ; to put every thing out of dispute by the clearness of its orders.
It may be objected, that this decree is interlocutory; and although it omits to provide that a title shall^be made to Mayo, the chancellor may provide for it by his final decree. But this is a final decree throughout, in form and substance. Omitting the words that “the plaintiff hath liberty to resort to the Court, as occasion may require,” &c. it would be allowed on all hands to be final. Nor do those words change its final character, either as to Mayo or Purcell. Not as to Mayo; because they keep open the door expressly as to Purcell only. Nor as to Purcell; for what are those words? They mean one of two things: either, 1. That Purcell should be at liberty to apply to the Court for process to force Mayo to do what the decree commanded: that is, to make the mortgage, or- pay the money; (in which case they mean nothing; because Purcell would have had liberty to resort to the Court, for that purpose, without those words; and, upon Mayo’s complying with the decree, it would certainly have been final,) or, 2. They mean that he'is to be at liberty to resort to the Court for the accruing interest, toties quoties. Such decrees are ‘common on running' contracts, where instalments are yet to be due, and are always regarded as final. The cause is off the docket; both parties out of Court: it is never to be redocketed; but when the plaintiff comes in, it is by a new bill.
But, if this decree is to be considered as interlocutory because there are in-stalments of interest yet to come, for which the plaintiff has leave to apply; everj' decree for the future instalments will be equally interlocutory; until the whole sha.ll be paid; because the same leave will be reserved in every decree; so that the decree for making the title need not come until after the twenty years; after the payment of four or five thousand pounds of interest I Both in practice and principle, it is a final decree.
Hay, for the appellee.
I admit, that where a decree is for the payment of purchase money, it ought to direct a title to be made; and that here it has not been expressly directed in terms; but it is impliedly. The decree says, that the contract ought to be specifically executed on both sides. So, in the contract itself, there is no express stipulation that a title shall be made: yet this was understood to be implied, of course.
No particular form of words is necessary in a decree. The Chancellor’s opinion, being expressed, is equivalent to an order. The Clerk, therefore, under this decree, would not issue an execution against Majro until Purcell had complied with the agreement on his part, by tendering a deed.
But suppose it not a fair inference from the decree that a deed is to be made; yet this Court, approving the decree as far as it goes, may add the direction- which the Court below ought to have added. According to a fair exposition of the 19th section of the Act of Assembly concerning- the Court of Appeals,(a) which says, that such decree or judgment may. be given, “if it be not affirmed or reversed in the whole, as the Court whose error is sought to be corrected ought to have given,” *there can be no question but this may be done. And it has been the practice, in affirming a decree, to make any necessary addition, (b) Indeed, the Court has even gone further, and added a restrictive explanation • to the judgment of a Court of law. (c)
*692 *1 am of opinion that the decree in this case ought to be reversed, and the cause remanded to the Superior Court •of Chancery for further proceedings, according to the foregoing principles; but, a majority of the Court being of a different opinion, the decree is affirmed.
Wickham, in reply.
Is this decree legal, or not? I have a right to say, on behalf of Mayo, that he appealed, because it directed him to pay the money absolutely, when it should have been conditionally; that is, with a proviso, that a title should be previously made him by Purcell. In Pollard v. Rogers, decided June 11th, 1791, the very point nowin question was decided: and in Grantland v. Wight, 2 Munf. 179, a similar decision took place; the Court determined the claim of Grantland to be one of the most unfounded that ever was; yet, for the oversight of the Chancellor, in omitting to direct a title to be made, the decree was reversed.
The expression of an opinion by the Chancellor, that the agreement ought to be specifically executed on both sides, contains an implication that Purcell had executed it on his side, and that Mayo ought to execute it on his side; not that Purcell ought now to make a deed. If it was to be understood as an opinion that Purcell ought to do it; nevertheless, it was not directed to be done. The clerk of the Court of Chancery was bound to issue the execution. Mayo could not get the error rectified without appealing to this Court, or by a bill of review.
Curia advisari vult.
Thursday, November 19th, 1812, the following opinion of the Court was delivered by
JUDGE ROANE.
The decree of the Court of Chancery being, inter alia, that the agreement should be specifically performed by both the parties, and that the appellant should execute a mortgage on the lands in the proceedings mentioned; which presupposes that a title should first be made to *him, therefor, by the appellee; this Court (thus understanding that decree,) is of opinion, that the same is correct upon the merits; and the same is consequently affirmed.

 Note. See also Heffner v. Miller, 3 Munf. 43.